## PIERCE et ux. v. GARRETT et ux.*

(Division B.   April 19, 1926.)

[107 So. 885.   No. 25590.]

1. DEEDS.  *Reconveyance, procured through duress brought to bear by Ku Klux Klan, after action had been brought by original grantors to set deed aside, will not be considered.*

   Where land was conveyed with partial consideration being support of grantors, a reconveyance, procured through duress brought to bear on grantees by Ku Klux Klan, after action had been brought by original grantors to set aside deed, will not be considered in such action.

2. APPEAL AND ERROR.

   Trial court's finding of facts, not against overwhelming weight of evidence, must remain undisturbed.

3. COMPROMISE AND SETTLEMENT.  *Compromise agreement, embodying provisions of former contract and new provisions relative to differences arising in performance of contract, intended as substitute for former contract, is binding.*

   Where compromise agreement adjusting differences arising in performance of contract embodies provisions of former contract in addition to new provisions, being intended as substitute for former contract, such compromise agreement is binding.

4. COMPROMISE AND SETTLEMENT.  *Family settlements are favored, and often will stand, despite mistake of law or fact, provided there is no conduct otherwise inequitable.*

   Family settlements are much favored by courts, and will be permitted to stand in many instances, notwithstanding they are based on mistake of law or fact, provided there is absence of conduct otherwise inequitable.

5. COMPROMISE AND SETTLEMENT.

   Real family differences are sufficient consideration to uphold family settlements.

6. COMPROMISE AND SETTLEMENT.  *Compromise agreement in settlement of differences, providing grantees would reconvey on breach of obligation to support grantors, held supported by sufficient consideration as settlement of such differences.*

   142 Miss.—41.

Where, after conveyance of land in consideration of support for grantors, differences arose, and subsequent compromise agreement was executed to effect that, if grantees breached obligation to support grantors they would reconvey, *held* that controversy settled by compromise agreement was sufficient consideration for mutual obligations of parties to such compromise agreement binding grantees to reconvey on breaching obligation.

7. CANCELLATION OF INSTRUMENTS. *Decree setting aside deed on failure of grantees to support grantors as agreed should have been on condition that grantors assumed payment of mortgage placed thereon by grantee, proceeds of which went to grantor.*

Where conveyance in consideration of grantors' support was set aside after grantees had procured loan, proceeds of which went to grantors, decree setting deed aside should have been on condition, as between grantors and grantees, that grantors assumed payment of loan with interest.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., p. 887, n. 62. Cancellation of Instruments, 9 C. J., p. 1271, n. 7. Compromise and Settlement, 12 C. J., p. 324, n. 22; p. 331, n. 47; p. 337, n. 3; p. 351, n. 43, 49; p. 361, n. 80. Contracts, 13 C. J., p. 356, n. 73. Deeds, 18 C. J., p. 234, n. 39. Termination of family controversies as sufficient consideration for compromise and settlement, see note in 25 L. R. A. (N. S.) 287; 25 R. C. L., pp. 878; 880; 1 R. C. L. Supp. 1542; 5 R. C. L. Supp. 308. Relief of grantor in conveyance in consideration of agreement to support, which is broken by grantee, see notes in 43 L. R. A. 916; L. R. A. 1917D, 627; 4 R. C. L. 510; 1 R. C. L. Supp., 1154.

APPEAL from chancery court of Lawrence county. HON. T. P. DALE, Chancellor.

Bill by D. W. Garrett and wife against C. C. Pierce and wife. Decree for complainants, and respondents appeal. Affirmed in part, and in part reversed and decree rendered.

*G. Wood Magee,* for appellants.

The contract in this case is void for lack of consideration. It was made and signed about thirty days after the deed was made by appellees to appellants and no consideration was paid therefor. No benefit was obtained by appellants by reason of the contract. It was

appellants' duty to do what they promised in the contract to do. If they failed to do what was their duty, then appellees had their remedy in an action at law. The deed reconveying the land to appellees was also void for want of consideration. A promise made to a person to induce him to perform an act which he is already bound in law to perform is without consideration and void. *Spencer* v. *McLean,* 67 A. S. R. 271; *Cobb* v. *Cowdery,* 94 Am. Dec. 370; *Keith* v. *Miles,* 39 Miss. 442.

If the contract referred to obligated appellants to pay more or do more than they obligated themselves to pay or do when they received the deed and they received no consideration for entering into this contract, then it is not binding on them for want of consideration. *Davis & Co.* v. *Morgan,* 97 A. S. R. 171.

On the question of duress, we submit that no one disputed that the Ku Klux Klan called upon the appellant, C. C. Pierce, in the nighttime and gave him a certain number of days in which time to make the deed, as testified about in the trial of this case. They were hooded, robed and armed—in other words, wore the armor of outlaws. That happening was a notorious one in the community, so much so that all the people in the community heard of it immediately.

The only question then remaining is: Whether or not the threats this Klan made caused appellants to surrender their rights and make the deed, as testified by Pierce and not denied by any one. In 9 R. C. L., p. 714, it is stated that in order to establish duress it is not necessary to show that actual violence was committed, but that moral compulsion, such as that produced by threats, may be sufficient in legal contemplation to destroy free agency, without which there can be no contract because in that case there is no consent. Many authorities are cited. See, also, 9 R. C. L., secs. 6, 7, p. 714; *Mack* v. *Prang,* 76 A. S. R. 851 and note; *Rice et al.* v. *Lumber Co.,* 73 So. 70; *Embry* v. *Adams,* 68 So. 20; *Martin* v. *Evans,* 50 So. 997; *Royal* v. *Brown,* 19 Am. Rep. 695; *Cribbs* v. *Sawle,* 24 A. S. R. 166 and notes; *Belate* v.

*Henderson,* 98 Am. Dec. 432; *Harris* v. *Carey et al.,* Ann.
Cas. 1913-A 1350; *Hattie* v. *Greenlee,* 26 Am. Dec. 370
and notes beginning on p. 374.

On the question of fact as to duress, the evidence
here is all with the appellant. And the preponderance
of the testimony is with appellants so far as the rela-
tive treatment appellants and appellees accorded each
other after both deed and contract were made.

We submit that the appellants are entitled to a decree
in accordance with the contentions which they make in
this cause upon the law. ·See *Dixon* v. *Milling,* 102 Miss.
449; *Lee* v. *McMorris,* 107 Miss. 889; *Lowry* v. *Lowry,*
111 Miss. 153.

*Jno. H. Arrington,* for appellees.

In the present case, while the deed is absolute on its
face, yet it is alleged by the pleadings and shown by the
evidence that the expressed consideration in the deed
was only a part of the consideration therefor, the main
consideration being that the appellees were to remain in
their old dwelling, on the lands conveyed, be supported,
cared for and waited upon in their enfeebled and decrepit
condition by the appellants, in whom they put their
trust and confidence, and for which hope and expecta-
tion they turned over their all—the accumulation of their
long lives.

The pleadings allege and the proof showed beyond
any question that the appellant, C. C. Pierce, was wholly
insolvent at the time of the delivery of the deed, Janu-
ary 1, 1924, and at the time of the final hearing of the
case. The fact is the very money part of the considera-
tion for this land was obtained by the appellants by ne-
gotiating a loan on the identical land and nothing else.

Pierce and wife moved out of the dwelling on
March 5, 1924, moved the stove wood and deserted these
old people in a cold spell of weather, leaving them with-
out anything to eat or even wood to make a fire to keep
them warm. And yet, when the appellants moved out of

the dwelling and ceased waiting upon and caring for the
welfare of the aged appellees, they failed and refused to
reconvey to them their home, which they had agreed to
do; and when appellees filed their bill for relief against
this intolerable outrage, appellants say, in substance,
with the effrontery of a German kaiser that the con-
tract was prepared by their attorneys and they signed it
merely to fool and palliate these old people for a time—
it is but a scrap of paper, and absolutely void for the
want of consideration. We submit that this of itself is
the grossest fraud, practiced on these aged people, and
shows conclusively the sole and only purpose of the ap-
pellants, from the very beginning, was to get these old
people's land for a song and put them out on the cold
charity of the world.

The case of *Dixon* v. *Milling,* 102 Miss. 449, 59 So.
804, 43 L. R. A. (N. S.) 916, decided by Justice REED, man-
ifestly followed the rule held in *Gardner* v. *Knight,* and
recited therein, stating the correct rule, 124 Ala. 273,
27 So. 298, and decided November 23, 1899. In 43 L. R.
A. (N. S.) in a note the question is discussed as to the
various holdings and many of the authorities cited, and
we invite the court's attention to these notes. We also
cite *Johnson* v. *Chamblee* (Ala.), 81 So. 27, where there is
a very able and learned opinion, reviewing many cases
and especially overruling *Gardner* v. *Knight, supra,* re-
cited by our court in *Dixon* v. *Milling, supra,* departing
from and abandoning the harsh rule in that case and
adopting that safe and saner rule held by the great
majority of the courts of this country and England.
The case of *Johnson* v. *Chamblee, supra,* has been fol-
lowed by the Alabama court in like cases of affording
relief to the grantor when the basis of consideration of
the conveyance is support and maintenance of the grant-
or. See *Russell* v. *Carver,* 208 Ala. 219, 94 So. 128; *Hy-
man* v. *Langston,* 210 Ala. 509, 98 So. 564. Hence, we sub-
mit that the chancellor was correct and warranted on the
evidence and facts in finding and holding that the deed of

conveyance of January 21, 1924, should be cancelled and his finding should not be disturbed by this court.

·Next we come to the consideration of the contract. It embodies in very solemn language the penalty for its breach: "If the Garretts breach it, they are to *move from the place;* if the Pierces, they *are to deed the place back to Garrett."* That is not all, "And this agreement shall be ·taken in any court, as a reason for canceling said deed." This contract, Exhibit B, is executed in duplicate before two witnesses, G. Wood Magee, attorney for appellants, and C. W. Rogers; and it was executed, according to the evidence, on or about February 15, 1924, instead of January 15, 1924, the date it bears—only twenty-four days after the execution and delivery of the deed, Exhibit A. Now opposing counsel argues strenuously that this is a contract absolutely void and cites many authorities to sustain his position.

We submit that this contract is binding on both the appellants and appellees, as being the sole interested parties; and if not based on the consideration of the deed, Exhibit A, and Garrett's refraining from interfering with the appellants in any wise in the cultivation of the lands conveyed or the use of the live stock, etc., then certainly it is a legal and binding contract by and between the interested parties based on the settlement of the row raised over ordering the appellees to vacate their old home. We conclude, and reasonably so, that this contract was a compromise and settlement of the row raised when appellants ordered and had their attorneys to order the Garretts to vacate the premises. See *Long* v. *Shackleford,* 25 Miss. 559; *Field* v. *Weir,* 28 Miss. 69; Chitty on Contracts, 44, 45; 2 Johns Ch. R. 59.

This family settlement rule was referred to with approval in the able opinion of special chancellor, William C. McLean, adopted by this court in *Powell* v. *Plant,* 23 So. 399 at 405. See, also, *House* v. *Collicot,* 83 Miss. 518, 35 So. 761; *Miller* v. *Bank of Holly Springs,* 95 So. 129; *Byrne* v. *Cummings,* 41 Miss. 192; *Magee* v. *Catch-*

*ings,* 33 Miss. 672. Hence, we submit that the contract Exhibit B, was a mutual, binding contract between the parties. When appellants moved out and ceased to give the appellees their personal attention and the care and comforts provided for in the contract, they breached the contract and appellees suffered the ills of such breach; hence, it is manifest that the chancellor was correct in his findings on the contract.

Appellant, C. C. Pierce, could not under any circumstances have been deprived of his will and free agency, according to his own declarations and acts prior to and at the time of the execution and delivery of the deed, July 24, 1924; and his very acts and conduct show conclusively that he was not under such restraint and impending danger at the time. On unlawful duress, see *U. S.* v. *Huckabee,* 16 Wall. 414, 21 L. Ed. 457; *Shattuck* v. *Watson,* 7 L. R. A. at 552 and note; *Fairbanks* v. *Snow,* 5 New Eng. Rep. 160, 145 Mass. 153; *Gardner* v. *Case,* 10 West Rep. 800, 111 Ind. 494.

If the Klan did visit him and compel or threaten him into the execution of the deed in question, it was without the knowledge, consent or procurement of these appellees; and, hence, we submit that the chancellor reached the right conclusion, both as to the law and as to the facts.

Argued orally by *G. Wood Magee,* for appellants, and *John H. Arrington,* for appellees.

ANDERSON, J., delivered the opinion of the court.

Appellees, D. W. Garrett and wife, filed their bill in the chancery court of Lawrence county against appellants, C. C. Pierce and wife, to cancel and set aside a deed theretofore executed by appellees to appellant C. C. Pierce, by which appellees conveyed to appellant C. C. Pierce their home in Lawrence county, consisting of one hundred eighty-nine acres of land. Appellants answered the original bill, denying the material allega-

tions thereof, and made their answer a cross-bill by which they sought to cancel and have set aside a conveyance made by them to appellees to said land during the progress of this litigation and after the orignal bill was filed. The case was heard by the chancery court on original bill, answer, cross-bill, answer thereto, and proofs, and a final decree was rendered granting the appellees the relief prayed for in their bill. From that decree appellants prosecute this bill.

The following is deemed a sufficient statement of the controlling facts out of which the questions arise for the decision:

Appellees, D. W. Garrett and wife, were, respectively eighty-five and eighty-four years of age. They had no children nor descendants of children. The land involved constituted their homestead. Appellant C. C. Pierce is a nephew of the appellee Mrs. Garrett. For many years appellant C. C. Pierce had resided in the home of appellees. They had practically raised him. Appellants were a young married couple. After their marriage, they lived in the home of the appellees and cared for the latter. Appellant C. C. Pierce managed the farm, and the two families received their support principally, if not entirely, from the proceeds of the farm. Before the transactions out of which this litigation arose, appellee D. W. Garrett made a will leaving appellant C. C. Pierce the property involved after the death of both of the appellees. So far as the record shows, the appellants and appellees seemed to have lived together in peace until after the 21st day of January, 1924. On that date appellees executed and delivered to appellant C. C. Pierce a conveyance of their home, the land involved. This conveyance recites a cash consideration of one thousand dollars and nothing more. Shortly after its execution, appellants borrowed from the Federal Land Bank, at New Orleans, the sum of one thousand two hundred dollars, out of which they paid appellee D. W. Garrett the sum of one thousand dollars, which constituted the cash consideration for the conveyance. That loan runs for a period of

thirty-five years, payable in annual installments, and is secured by a mortgage on the land involved. This mortgage was executed alone by appellants, who had the title to the land at the time the loan was effected.

The one thousand dollars cash was not all the consideration for the conveyance from appellees to appellant C. C. Pierce. The evidence shows that there was little, if any, real controversy as to the fact that, in addition to the cash payment of one thousand dollars for the land, appellants agreed verbally to maintain and support appellees as long as they lived with appellants in their home; that in addition they were to care for them and wait on them in sickness and in health. This further consideration rested alone in parol until later on, when it was embodied in a contract between the parties, the provisions of which will presently be stated.

Shortly after the conveyance by appellees to appellant, C. C. Pierce, the troubles of the parties began, and they appear to have been many. There was disagreement, controversy, and strife between them; there were charges and countercharges of wrongdoing. Appellees contended that appellants were violating their verbal contract to maintain, support, and care for them, which was a part of the consideration of the conveyance; while appellants contended that they were doing their full duty in that respect and more, and that, on the other hand, appellees were so unjust and unfair in their treatment of the appellants that the two families could not live together. There was a sharp conflict in the evidence as to whether the appellants were performing their obligation to maintain, support, and care for appellees or not. The relations of these parties had reached such a stage by the 11th of February, 1924, that appellant C. C. Pierce conceived that he had the right under the law to dispossess the appellees of the place and put them out of the home. On that date he employed attorneys, who wrote appellee D. W. Garrett a letter on behalf of appellants, in which they stated that they had been employed by appellant C. C. Pierce to get possession of the place

for him. In the letter they gave appellee D. W. Garrett notice to vacate the place at once, otherwise they would take legal steps to dispossess him and his wife.

This state of affairs continued until the 15th of February, 1924, when mutual friends brought about a compromise settlement between the parties. This compromise agreement was embodied in a written contract signed by appellants and appellees. The compromise agreement sets out, in substance, that the consideration for the conveyance from appellees to appellant C. C. Pierce was not alone the one thousand dollars in cash therein recited, but in addition that appellants would maintain and support and nurse and care for appellees in sickness and in health as long as they remained in the home. The contract recites further that appellants had renewed that obligation to maintain and support appellees, and that they would carry it out. It is also recited in the agreement that appellees obligated themselves to treat appellants right, and in no way interfere or hinder them in the management or conduct of the farm. The last paragraph of the compromise agreement is in this language:

"If Garrett and wife (appellees) violate this agreement, they agree to move from the place: if Pierce and wife (appellants) violate it, they agree to deed the place back to Garrett, and this agreement shall be taken in any court as a reason for canceling said deed."

This compromise agreement, however, was not effective long. In fact, it seems to have accentuated the differences between the parties instead of helping their relations. Their charges and countercharges of failure to carry out the contract were renewed with more vigor and heat than ever. Finally appellants left the home and moved into a cabin on the place. Soon thereafter and on the 10th day of June, 1924, appellees filed the original bill in this case to cancel the conveyance from them to appellant C. C. Pierce, made on the 21st day of January, 1924, on the ground that the conveyance was procured by fraud, and also that the consideration of the conveyance had failed, in that appellants had vio-

lated their contract to properly maintain and support and care for appellees. Appellees answered the bill, denying its material allegations. After the answer was filed and before the final hearing of the cause, the Ku Klux Klan took a hand in the matter; they came disguised, and through intimidation forced appellants to reconvey the land involved to appellees. This conveyance was made on the 24th day of July, 1924, and recites a cash consideration of one thousand two hundred dollars. Thereafter appellants made their answer a cross-bill, setting out the execution of that deed, and that it was procured by duress, and praying its cancellation.

The court in its decree found the facts against appellants. In short, the court found as facts that appellants had violated their obligation to maintain, support, and care for appellees, which obligation was part of the consideration of the conveyance from them to appellant C. C. Pierce, and further that the deed from appellants back to appellees, made pending this litigation on July 24, 1924, was not brought about by duress on the part of the Ku Klux Klan. The decree granted the relief in full prayed for by appellees.

As we view the record in this case, the only question is whether appellees were entitled to a cancellation of the conveyance to appellant C. C. Pierce, of date of January 21, 1924. We think that the reconveyance of the land by appellants to appellee of July 24, 1924, is to be eliminated from consideration because the evidence shows without conflict that the deed was procured through duress brought to bear upon appellants by the Ku Klux Klan.

Out of the mass of conflicting testimony in this case, it is indeed difficult to determine who was more at fault as between these two families; whether or not appellants violated their contract, which was a part of the consideration of the deed, to maintain and support appellees. We are unable to say that the court's finding of facts was against the overwhelming weight of the evidence.

Unless that can be said, under numerous decisions of the court, such finding must remain undisturbed.

But the appellants contend that, even though the finding of facts by the chancellor was against them, nevertheless such finding was insufficient in law to justify the decree of the court. Appellants' position is this: That, even though there was a failure of consideration for the conveyance because of appellants' breach of their obligations to maintain, support, and care for appellees, nevertheless, under the authority of *Lowrey* v. *Lowrey,* 71 So. 309, 111 Miss. 153, *Lee* v. *McMorries,* 66 So. 278, 107 Miss. 889, L. R. A. 1915B, 1069, and *Dixon* v. *Milling, Co.,* 59 So. 804, 102 Miss. 449, 43 L. R. A. (N. S.) 916, appellees were not entitled to cancellation. It was held in the Lowrey case that the failure to support, in accordance with the promise which was the consideration of the deed there involved, was not sufficient to support a suit for its cancellation, and that there was no implied equitable lien in favor of the grantor on the land conveyed to secure the payment of the consideration because the agreement to support during the lifetime of the grantor was an obligation too uncertain and indefinite in character to be enforceable as a lien. In the Lee case the court declared exactly the same principles as were held in the Lowrey case. In the Dixon case the court held that the deed conveying the land in consideration of an agreement to support the grantor could not be canceled for a breach of the undertaking; the remedy being an action on the undertaking.

Appellants' position would seem to be sound under those authorities, except for the compromise agreement entered into between the parties on the 15th of February, 1924; the last paragraph of which provided, among other things, that, if appellants violated their agreement to maintain and support and properly care for appellees, they would reconvey the land to them, and, if they failed to reconvey, that any court having authority should for that reason cancel the conveyance. Appellants argue, however, that there was no consideration for the com-

promise agreement; that there was no new consideration passing between the parties, that the original consideration for the conveyance, which existed when it was made, was the sole consideration for the compromise agreement, and therefore the last paragraph as well as the balance of the compromise agreement was without any binding force. Putting it differently, appellants' contention means that, when the conveyance was made, there was an agreement, as part of the consideration therefor, that, if appellants violated their obligation to maintain and support appellees, they would reconvey the land to the appellees, and, there being no new consideration therefor, that stipulation in the compromise agreement was void and had no binding force on appellants. Authorities are cited to the effect that a subsequent compromise agreement between parties by which they bind themselves to do no more than they are already required to do by a former agreement has no binding force. The appellees' position is that there was a consideration for the compromise agreement, which consideration consisted of a settlement which the parties hoped would be a final settlement of real differences and controversies which had arisen between them as to whether appellants were carrying out their obligation under the conveyance to maintain and support appellees. Undoubtedly, there may be compromise agreements which are not binding because based on no consideration. For illustration, where there are no well-founded conflicting claims between the parties, a compromise settlement amounts to no more nor less than the original contract. But where parties have entered into a contract, and subsequently in the performance of the contract real differences and apparently well-founded claims have arisen between them as to the proper interpretation of the contract or as to whether the parties thereto are meeting their obligations as provided in the contract, such conflicting differences and claims are sufficient to constitute a valid and binding consideration for a compromise agreement adjusting such differences and claims. Especially is that true where the

original contract is largely executory on both sides. Under those circumstances, where the new contract embodies the provisions of the former contract and in addition new provisions are made, and the compromise agreement is intended as a substitute for the former contract, such a compromise agreement is binding. *Long* v. *Schackleford*, 25 Miss. 559; *Field* v. *Weir*, 28 Miss. 69; 13 C. J., p. 356, section 215. Furthermore family settlements are much favored by the courts. They will be permitted to stand in many instances, notwithstanding they are based on a mistake of law or fact, provided there is an absence of conduct otherwise unequitable. *Powell* v. *Plant* (not officially reported) 23 So. 339 (O. C.) left column page 405; *Spencer* v. *Spencer*, 75 So. 770, 115 Miss. 71. Real family differences are a sufficient consideration to uphold such settlements.

We think the chancellor's finding of fact that appellants violated their contract to maintain and support appellees was supported by the evidence, and it necessarily follows therefrom that the differences and contentions between appellants and appellees leading up to the compromise agreement were real, not imaginary, differences.

We therefore conclude that the last paragraph of the compromise agreement by which the appellants agreed that, if they breached their obligation to maintain and support appellees, they would reconvey to the appellees the land involved, was a binding provision, that the controversy settled by the compromise agreement was a real controversy, and that therefore the mutual obligations of the parties thereto were each a sufficient consideration for the other. Under the compromise settlement, appellants obligated themselves to do precisely in effect what the chancellor did by his decree.

The decree of the court below fails to take care of the payment of appellants' notes to the Federal Land Bank. Appellees, under the decree, will own the land involved; they received the proceeds of the loan from the Federal Land Bank, and still appellants are personally liable

for the repayment of the loan with interest, which loan runs over a period of thirty-five years. The relief granted appellees should have been upon condition that, as between appellants and appellees, the latter should assume the payment of the loan with interest, and, if appellants should at any time be forced to pay the same or any part thereof, they shall be subrogated to the lien and rights of the Federal Land Bank or any holder by assignment of the notes and mortgage.

We think it unnecessary to remand the case to the lower court for the purpose of a decree so protecting the rights of appellants, but instead the decree of the court below will be affirmed except as to that feature, and a final decree will be entered here preserving the rights of appellants, as above indicated.

*Reversed in part, and affirmed in part.*