CHARLES GLATTLI *et al. v.* J. J. BRADFORD *et al.*

[62 South. 643.]

1. LIS PENDENS. *Purchasers pending suit. Vendor and purchaser. Vendor's lien. Enforcement against subsequent purchaser.*

The filing of a *lis pendens* in an attachment suit against lands does not prevent or make unlawful the sale of the land to be affected by the suit in which the notice is filed, except to the extent that parties purchasing the land *pendente lite* take it subject to the rights of the parties to the suit as it may be finally determined, and such purchasers are not bound by an agreement, in which they did not participate, made by the parties to the suit, to otherwise dispose of the land, and the fact that this agreement was approved by the court in which the case was pending is immaterial.

2. SAME.

The purchaser of land subject to a vendor's lien can be divested of the title thereto, by virtue of this lien, only by means of a sale made pursuant to a decree entered in a proceeding, to which he is a party, instituted for the purpose of foreclosing the lien.

APPEAL from the chancery court of Peal River county. HON. R. E. SHEELY, Chancellor.

Suit by J. J. Bradford against Charles Glattli and others.

From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*T. M. Miller,* for appellants.

It is believed that the only effect of a *lis pendens* notice is to preserve the status against the world and to enable the seizing creditor to subject the property seized to the judgment he may obtain, notwithstanding any attempt on the part of the defendant *ad interim,* to dispose of it.

But, if an attachment is dismissed, that is to say the seizure discharged, it stands precisely as if there had been none; and the fact that the attaching creditor may have been deluded by the defendant into dismissing the suit upon a verbal promise to convey the property to him, could, under no circumstances, invest or reinvest the title in the defendant. It would have required the assent of Munsin to make Schell's agreement effective.

Aside from all this, even should it be assumed that, in view of the seizure and *lis pendens* notice, Schell was at liberty to make an enforceable verbal agreement to convey the lands to plaintiff, it does not appear that any attempt has been made in this case to execute such an agreement, for, the motive that induced Harmon Schell to convey the lands in question to John J. Bradford, December 12, 1903, is not shown to have been related, in any way, to these entries on the court records.

The writer's understanding is that a writ of attachment and *lis pendens* notice have no effect other than to subject the seized property to whatever judgment may be rendered in the cause regardless of any intervening or supervening interest in the property created by the defendant.

It is said that "Notice of Pendency" is a term that has very generally superseded *lis pendens* to indicate this branch of the law; that such statutes, however, except as to the time when the *lis pendens* commences, leave the general principles governing the subject practically unchanged.

And the following doctrine is stated without exception: "The general rule as to the *lis pendens* is that a person who acquires an interest in the property involved in litigation *pendente lite,* and from a party litigant, takes, subject to the rights of the other parties to the suit as finally adjudicated, and is concluded by the judgment or decree whether he becomes a party to the action or suit and has his day in court or not." 21 Am. and Eng. Ency., title, "Notice of Pendency," page 595, citing, *inter alia, Osborne* v. *Crump,* 57 Miss. 622, and *Allen* v. *Poole,* 54 Miss. 323.

And, quoting from the 25th volume of Law and Procedure, on page 1476: "One acquiring interests *pendente lite* in a proceeding which is *lis pendens* is bound by the decree without regard to its form, or whether it is erroneous. It is immaterial that the relief granted in the suit is the result of agreement or compromise, or other than that prayed for in the pleadings, except where the result of a collusion between the parties. But, where there is an agreed judgment not based on the grounds for relief relied on in the suit, a *pendente lite* purchaser is not bound thereby."

Also: "The rule has been laid down that the purchasers of land from a defendant in a suit in which the lands have been attached take the lands subject to all the contingencies of the suit and are bound by the judgment therein, and this rule has often been applied so as to give priority to the attachment as against interests acquired *pendente lite* after the lien has attached, although it, would seem that it is the levy of the attachment itself, and the creation of the lien thereby, that subordinates the rights of one thereafter acquiring interest in the attached property rather than the doctrine of *lis pendens.*" 25 Ency. of Law & Procedure.

To effectuate notice of pendency, the following are declared, without exception, to be requisite: "The court must have had jurisdiction at the time of the transfer

over the subject-matter and the party from whom the interest is acquired; and the litigation must have resulted in a judgment or decree against such party, affecting the property and within the issues made.'' 21 Am. and Eng. Ency., 607-08.

It is submitted that the only conceivable equity Mrs Bradford would have had, after the dismissal of her attachment suit, without knowledge of Schell's inability to make the title back, would have been to restore the *status quo* upon proof of a conspiracy between Schell and Munson, his vendee; but, even that right of equity, questionable as it is, would not have enabled her to set aside titles subsequently acquired in good faith, as in the case of these defendants. Moreover, such is not the scope or purpose of complainant's bill.

The only judgment that could have been rendered that would have bound Munson, the purchaser *pendente lite* from Schell, would have been one establishing a debt and condemning the attached property to be sold for its satisfaction, and, even, then, Munson, to protect his purchase, would have had the undoubted right to pay off the judgment.

So, instead of prosecuting her suit with diligence to a final conclusion, as the authorities require, in order to hold a *lis pendens* purchaser, Mrs. Bradford seems to have entered into a private agreement with Schell (which was never executed), whereby she was to dismiss her suit and Schell was to convey to her the property he had already conveyed to Mr. Munson.

As previously stated, the only effect of a notice of *lis pendens* is to enable the plaintiff to subject the property involved to the satisfaction of the judgment he may obtain, but here no judgment was obtained. On the contrary, the suit was dismissed, that is to say, the property freed from it and an agreement substituted, for what consideration it does not appear, by which the defendant was to convey the land to the plaintiff.

It may or may not have been a recognition of plaintiff's right to subject the lands to the debt sued for. And, as to that, the court is not advised.

It needed no recognition on the part of Harmon Schell, a nonresident, or the right of Mrs. Bradford to subject the lands to her claim as of the date of seizure. That admits of no question; but he certainly had no right to enter into a contract, if he did, to pay the debt voluntarily by conveying lands already sold by him.

By virtue of *lis pendens,* in common law, or notice of *lis pendens,* under the statute, the plaintiff may, regardless of intervening alienations or encumbrances, subject the property to the final judgment he may obtain, and that is all. A purchaser *lis pendens* takes no chance of voluntary agreements between the parties that would deprive him of his rights.

Wherefore, complainant's counsel is in error in treating the entry of dismissal of the attachment, coupling a note of defendant's agreement to convey to plaintiff, as having the effect of a confession of judgment or contract to convey, binding from the date of the institution of the suit as against the purchaser.

Contracts to convey property cannot be evidenced in that manner. All the circuit court could do was either to dismiss the suit or render judgment for plaintiff and directing the sale of the attached property to pay it. Nobody was called upon to take notice of a recital on the minutes of the court, that, instead of proceeding with her attachment suit, Mrs. Bradford had accepted an agreement from Schell to convey the property to her.

A judgment made under the rule, of necessity, adverted to by counsel, would have related back to the day of seizure, but not so with an agreement to convey. That had no back relation whatever.

Aside from all this, if, without any writing signed by Schell or by some person by him thereunto in writing duly authorized, one had made an agreement, in October,

105 Miss. 37

1895, in his behalf, to convey the lands in question to Mrs. Bradford, what effect has a deed to Mr. Bradford, in 1903, on the title previously acquired (June, 1895), by Munson and by him conveyed to purchasers in good faith?

The authorities require diligence in these matters to hold a purchaser, *pendente lite,* as see note to the *Phillipi case,* on page 873, 56 Am. St. Rep., the case cited by counsel. The decree appealed from can have no other possible meaning.

"The rule of *lis pendens* is in many instances very harsh in its operation, and one who relies upon it to defeat a *bona fide* purchaser must understand that his case is *strictissimi juris."* It will be noted that a decree was rendered in 25 Ency. of L. & P., page 1452, citing numerous authorities.

*Frank Johnston,* for appellee.

The point is, that cross appellant, Glattli, who purchased the legal title from Munson, who purchased from Harmon Schell, the defendant, in the-attachment suit of *Bradford* v. *Schell,* seeks to have his title prevail as a paramount title over that of Bradford, the original owner of the land. Captain Bradford had sold the land to Schell, who never paid anything for it, and the attachment proceeding on the land was for the purchase money. This is an equity proceeding, and equitable titles and rights are being adjudicated in this proceeding according to the principles of equity. Bradford claims that he is the equitable owner as against the purchaser from Munson.

Munson purchased the property *lis pendens,* and with legal constructive notice of the attachment suit and all that was contained in that suit. He had constructive notice that the suit was for the purchase money. He had full constructive notice, not only from this attachment suit, but from the deed from Mrs. Bradford to Schell

that the purchase money was unpaid, and that there was
a vendor's lien. Munson was therefore a purchaser *pen-
dente lite*. His vendees occupy precisely the same status.
Bradford had a paramount equitable claim for his pur-
chase money. In taking back the land by reconveyance
from Schell, Bradford acquired an equitable title, right
and estate in this land superior, certainly, to the extent
of his vendor's lien for the unpaid purchase money; su-
perior to the legal title of Munson the purchaser *pendente
lite.*

I contend there is a purely equitable question, where
equitable title and rights and ownerships are to be adjud-
icated, that the purchasers from Munson cannot have a
decree declaring that their rights to the land are equita-
bly superior to the equitable title and ownership of Brad-
ford.

The universal rule governing this question in the case,
is that no party in an equity suit is entitled to equitable
relief, except upon equitable terms and conditions. And
fundamentally a universal principle of equity jurispru-
dence is that in order to obtain relief the party must do
equity. Now in this case I most respectfully and earnest-
ly deny that Glattli can have, on any principle sanctioned
by a court of equity, a decree which would place his legal
title above the superior equity of Bradford to have either
his land or the purchase money.

Glattli could, therefore have only had a standing in any
equity court by setting up, as the owner of the equity of
redemption, through the conveyance from Schell to Mun-
son, the equitable right to pay off and discharge the pur-
chase money, due to Bradford and secured by the su-
perior and paramount vendor's lien. Upon any other
possible basis or theory this purchaser from Munson
would have his title declared paramount to and distinct-
ive to the superior equity of Captain Bradford. Such
an outcome in an equity cause would be a solecism, where
the respective titles and equities are all declared and
the facts supplemental to the pleadings are set out in a

special agreement of counsel. There was no offer by this party to pay off and redeem the vendor's lien. On the contrary this party stood pat on what he must have supposed to have been a paramount and a superior title.

It is wholly unnecessary for me to cite you any authorities upon which I rely, viz.: 1. That a purchaser *pendente lite* is not a purchaser for value and without notice; 2. That in an equity proceeding the paramount and superior equitable title as right must prevail; 3. That a party cannot obtain any equitable relief in a court of equity without offering in the first instance to do equity; 4. That to do equity in this case for this purchaser *lis pendens* would have been to have offered to redeem this land from Bradford's vendor's lien, which he never proposed to do. And let me add in conclusion that the observation of counsel in this court that the vendor's lien theory is a new one is wholly immaterial.

This is in the case shown by the exhibits as it appears to me in Mrs. Bradford's deed to Schell. Besides the whole case was submitted to the chancellor as it stood on the pleadings and the agreed facts in the case. The chancellor, it is to be assumed, and must be fairly assumed adjudged Captain Bradford's equitable claim and title to be superior and paramount to the legal title of the purchaser *pendente lite*, upon the well-recognized principle governing equitable rights and equitable relief in equitable causes.

Argued orally by *T. M. Miller*, for appellant and *Frank Johnston*, for appellee.

SMITH, C. J., delivered the opinion of the court.

Appellee filed his bill in the court below, alleging that he was the owner of the land in controversy, and praying that the claims of appellants thereto be canceled as clouds on his title. From a decree in his favor this appeal is taken.

The facts are that in 1891 appellee, who was then the owner of the land in controversy, sold and conveyed it to a man named Schell, for a certain price to be thereafter paid. In 1894 Mrs. Bradford, who the bill alleges then owned the debt incurred by Schell in the purchase of this land, sued out an attachment at law against him, he being a nonresident, which attachment was levied on the land in controversy. When this attachment was sued out, a *lis pendens* notice was filed and recorded. Afterwards these parties seem to have compromised their differences, and the following order was entered upon the minutes of the court: "C. C. Bradford v. Harmon Schell. Dismissed at plaintiff's costs, upon defendant delivering to plaintiff or her legal attorneys deeds to the land in controversy."

No deed was ever executed pursuant to this agreement; but in 1903, eight years thereafter, Schell executed and delivered a deed to the land to appellee herein, the husband of the plaintiff in the attachment suit. Why this deed was made to appellee, instead of his wife, does not appear from the record. While this attachment suit was pending, Schell conveyed the land, for a valuable consideration, to John W. Munson, and through him appellants claim by mesne conveyances. Neither Munson nor appellants had any actual knowledge or notice of the attachment suit, or of the agreement under which it was dismissed, having only such notice relative thereto as they are charged with by law by reason of the filing of the *lis pendens*.

The filing of a *lis pendens* does not prevent or make unlawful the sale of the land to be affected by the suit in which the notice is filed, except to the extent that parties purchasing the land *pendente lite* take it subject to the rights of the parties to the suit as it may be finally determined. In the case at bar, Munson purchased the land subject only, in so far as this attachment suit is concerned, to the right of the plaintiff therein to have it

sold for the payment of her debt, should judgment be rendered in her favor, in which event he would have had the right to pay off the judgment and free the land from the lien thereof. He could be divested of title, as a result of this suit, only by a sale of the land made in the manner provided by law pursuant to a judgment therein rendered. He is not bound by the agreement, in which he did not participate, made by the parties to the suit, to otherwise dispose of the land, and the fact that this agreement was approved by the court in which the case was pending is immaterial. Appellants have, of course, succeeded to all the rights which Munson had in the land.

The fact that, when Munson purchased the land, it was subject to a vendor's lien in favor of the plaintiff in the attachment suit, is immaterial. The purchaser of land subject to a vendor's lien can be divested of his title thereto, by virtue of this lien, only by means of a sale made pursuant to a decree entered in a proceeding, to which he is a party, instituted for the purpose of foreclosing the lien.

Reversed and bill dismissed; appellee to pay costs here and in the court below.

*Dismissed.*