338 So.2d 1233 (1976)
Marvin Earl GREER and Janie Greer Murphy
v.
Mrs. Ruby Rivers HIGGINS et al.
No. 48944.
Supreme Court of Mississippi.
November 9, 1976.
Wilroy, Hagan & Lee, William F. Hagan, Hernando, for appellants.
James W. Amos, Olive Branch, for appellees.
Before INZER, P.J., SMITH and BROOM, JJ., and JONES, C.
BERT H. JONES, Commissioner, for the Court:[1]
This is an appeal from a decree of the Chancery Court of Tate County dismissing *1234 appellants' Bill of Complaint to cancel a deed. Mr. Earl Greer departed this life on June 20, 1970. Mr. Greer in his lifetime was married on two occasions. By his first marriage Mr. Greer had five children, to-wit: Ruby Rivers Higgins, Mamie Lee Hawks, Sadie G. Anglin, Virginia G. Williams and Forest B. Greer. The said children of the first marriage are the appellees in this case. After the termination of his first marriage, Mr. Greer married Annie Bell Greer and to this marriage were born Marvin E. Greer and Janie Greer Murphy, who are the appellants in this case.
After the death of Mr. Greer his heirs were under the impression that he had died intestate. At the time of his death Mr. Greer owned a 39 acre tract of land and also an undivided one-half interest in another 40 acre tract directly to the north of the 39 acre tract, all in Tate County, Mississippi. The remaining undivided one-half interest in the 40 acre tract was owned by his second wife, Annie Bell Greer.
On September 30, 1970, all of the heirs of Mr. Greer appeared in the office of Mr. Nat Trout, an attorney, apparently to discuss their respective rights in and to the estate of Mr. Greer. They were advised by Mr. Trout that if Mr. Greer died intestate that his widow of the second marriage and all of his children would inherit and share equally in any property owned by him at the time of his death. After receiving this advice, all of the heirs decided to divide the land owned by Mr. Greer among the heirs. Quit Claim Deeds were accordingly prepared by Mr. Trout to accomplish this purpose. One deed conveyed to the children of the first marriage an agreed portion of the land. This deed conveyed 37 1/2 acres out of the 79 acre tract. Another deed conveyed to the widow an agreed portion of land which conveyed to her 27 1/2 acres out of the 79 acre tract. Another deed conveyed to one of the children by the second marriage an agreed portion of land conveying 7 1/2 acres, and the remaining deed conveyed to the other child by the second marriage an agreed portion of land conveying 6 1/2 acres out of the 79 acre tract. All of the deeds were dated September 30, 1970, and each contained the following recital:
The Grantors herein along with the Grantees constitute and are all of the heirs at law of Earl Greer, deceased, who died intestate and the purpose of this deed is to effect a division of all real property in which the said Earl Greer had an interest at the time of his decease, and which division has been agreed upon by all of the heirs.
In March 1974 the children of the first marriage, the appellees herein, had an opportunity to sell the portion of land which had been conveyed to them by the September 1970 deed. The appellees had decided to accept the offer that had been made to them and preparations were under way to close the transaction. Before the sale was closed, however, it came to the knowledge of the parties that Mr. Earl Greer had left a will. A Mr. Wilfred L. "Snooks" McElroy, a witness presented by the appellants, testified that in March 1970 he had an uncle, Vernon Greer  the record showed no relation to Earl Greer  who was in the hospital and Mr. Vernon Greer asked Mr. McElroy to go to the Bank of Olive Branch and transact some business for him. Mr. McElroy contacted a Mr. Bruce Payne, then an employee of that bank, and while searching for the papers of Mr. Vernon Greer, Mr. McElroy testified that Mr. Payne showed him an envelope that had marked on the outside, "Last Will and Testament of Earl Greer to be opened by Bruce Payne at my death." Mr. McElroy testified that along about March 1974 that it came to his attention that the heirs apparently still had no knowledge of the will of Mr. Earl Greer. Mr. McElroy took steps to assure that his knowledge in regard to the existence of the will was communicated to all of the heirs. This resulted in the will being discovered and the proposed sale by the appellees was stopped. The will of Earl Greer was duly admitted to probate and there is no contest in reference to it. The will of Mr. Greer is dated November 11, 1958. By its terms he devised all of his interest in the 79 acre tract to his second wife and the two children of the second marriage. He devised *1235 another 40 acre tract which he then owned to the children of his first marriage, but prior to his death this 40 acre tract was sold and disposed of by Mr. Greer.
The widow of the second marriage and her two children filed their bill of complaint to cancel the deed which they had executed on September 30 to the appellees as aforesaid. The complainants alleged that one or more of the appellees had knowledge of the will when the deeds were executed in September 1970 and fraudulently neglected to reveal knowledge thereof. Complainants further alleged that they were entitled to relief on the ground of failure of consideration and mistake.
Subsequent to the filing of the Bill of Complaint, Mrs. Annie Bell Greer departed this life intestate and the cause was thereafter revived in the name of her two children and only heirs, who are now the appellants herein. The appellees filed their answer in which they admitted that they all believed that their father had died intestate and denied that any of them had any knowledge of the will when the deeds were executed. Appellees denied that appellants were entitled to have canceled the deed which was executed to them.
There was some slight testimony by one of the appellants, Janie Greer Murphy, that one of the appellees, Forest Greer, admitted to her, her brother Marvin E. Greer and her mother that he had knowledge of the existence of the will, but did not know of its contents at the time of the execution of the deeds. This testimony was denied by the appellee, Forest Greer, and was weakened by the testimony of other witnesses including that of the appellant Marvin E. Greer, who failed to corroborate the testimony of his sister on this particular issue. The chancellor found that no fraud was committed by any of the appellees and this finding is not contested by the appellants. On this appeal appellants seek reversal on the ground of failure of consideration and mutual mistake of fact.
In our opinion, the issue of mutual mistake of fact is the determinative issue in this case. We will, therefore, confine our subsequent discussion to that issue.
At the conclusion of the case the chancellor took the cause under advisement. Thereafter the learned chancellor rendered a lengthy and comprehensive opinion. In his opinion the chancellor gave consideration to the issue of mutual mistake of fact but stated that in his opinion the case is controlled by the case of Jackson v. Rutledge, 231 So.2d 803 (Miss. 1970). The chancellor declined to cancel the deed executed to the appellees and dismissed the Bill of Complaint.
In our opinion this case is distinguishable from Jackson. In Jackson the issue of mutual mistake of fact was not raised or discussed in any manner. The sole issues in that case were fraud and failure of consideration. In Jackson neither of the parties were heirs of the decedent. Mrs. Jackson was a niece of the deceased husband of the decedent and Rutledge was the divorced husband of a niece of the decedent. Mrs. Jackson was reared by the decedent and her husband and lived with them until she was twenty years of age when she married. After her marriage, Mrs. Jackson moved to Pascagoula and had lived there for twenty-two years at the time of the death of the decedent. After the marriage between the niece of the decedent and Rutledge was dissolved by divorce, Rutledge continued to live in the home of the decedent and was living there on the date of the death of the decedent. In such a situation, the only manner in which either Mrs. Jackson or Rutledge could acquire any interest in the estate of the decedent was through a will executed by her. It seems to us, therefore, that in Jackson the parties of necessity had the possibility of a will in mind when they executed the deeds and assignments to each other, otherwise nothing could have been accomplished by their acts. In the case now before us, none of the parties thought that Mr. Greer had left a will.
In the case of Nabours v. Cocke, 24 Miss. 44 (1852), the Court said:
We are satisfied that both parties entered into the compromise with the distinct *1236 understanding and belief that a forthcoming bond had been given by Atkins in the suit of N. & J. Dick & Co. against him, upon which Jester Cocke, Alfred Mullins and Stephen Cocke had become sureties; and that the same had been forfeited, and existed as a statutory bond, having the force and effect of a judgment against the obligors thereto. In this we have seen they were mutually mistaken; and, as the compromise was made under a mistake of such a material fact, we think it should have been set aside and that the money paid by Mullins, with interest, should be refunded and his note surrendered to his administrators. (24 Miss. at 54).
In 17 C.J.S. Contracts § 144, at 894, it is said:
A mutual mistake [of fact] is one common to both parties to a contract, each laboring under the same misconception; more precisely, it is one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement. The mistake may apply to the nature of the contract, the identity of the person with whom it is made, or the identity or existence of the subject matter; but in order to relieve a party from liability on the contract, the mistake must relate to a material fact, past or present. Misrepresentation or fraud is not essential to proof of a mutual mistake.
There can be no doubt that when the parties executed the deeds to each other in September 1970 they were all laboring under the mistaken belief that Mr. Greer had departed this life intestate. There can be no doubt that the mistake was mutual and there can be no doubt that the mistake was material. The deeds would not have been executed but for the mistaken belief as to the non-existence of the will.
We are, therefore, of the opinion that the facts of this case present a clear case for the application of the doctrine of mutual mistake of fact and that, accordingly, the deed executed by the appellants and their mother to the appellees should be cancelled and set aside.
Appellees contend that the September 1970 deeds were executed as a result of a family settlement and cite the case of Pierce v. Garrett, 142 Miss. 641, 107 So. 885 (1926). Appellees also contend that the provisions of Section 89-1-39, Mississippi Code 1972 Annotated, governing quit claim deeds are applicable in this case. We find no merit in either of these contentions.
For the reasons stated the decree is reversed and judgment will be entered here granting the relief prayed for in the Bill of Complaint.
REVERSED AND RENDERED.
GILLESPIE, C.J., PATTERSON, and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.