# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-01281-SCT

*IN THE MATTER OF THE CONSERVATORSHIP*
*OF JOYCE G. REDD: JOYCE G. REDD*

*v.*

*JOHN R. REDD, WILLIAM HOWARD REDD,*
*RICHARD LEE REDD, ROBERT CHARLES*
*REDD, TINA CUTAIA ARIAS, REGIONS BANK AS*
*TRUSTEE, AND BRIAN KEITH REDD*


| | |
|---|---|
| DATE OF JUDGMENT: | 07/15/2019 |
| TRIAL JUDGE: | HON. JOHN C. McLAURIN, JR. |
| TRIAL COURT ATTORNEYS: | D. RONALD MUSGROVE |
| | HARRIS H. BARNES, III |
| | RICHARD POOLE NOEL, III |
| | CODY WILLIAM GIBSON |
| | JOHN HOUSTON DOLLARHIDE |
| | WILLIAM SCOTT MULLENNIX |
| | CHRIS N. K. GANNER |
| | CAROLINE BAKER SMITH |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | D. RONALD MUSGROVE |
| | MICHAEL SHELTON SMITH, II |
| ATTORNEYS FOR APPELLEES: | HARRIS H. BARNES, III |
| | RICHARD POOLE NOEL, III |
| | JOHN HOUSTON DOLLARHIDE |
| | JAMES WILLIAMS JANOUSH |
| | CAROLINE BAKER SMITH |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED - 11/18/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. In 2018, five of the late Richard Redd's six children (the Petitioners) sought the appointment of a conservator and guardian over their mother, Joyce Redd. They also sought various temporary, preliminary, and permanent injunctions to prevent Joyce from taking further financial action without their approval. The Petitioners claimed that their brother, Brian Redd, unduly coerced Joyce into financial decisions detrimental to her estate. Joyce and Brian opposed the injunctive relief sought by the Petitioners.

¶2. Joyce Redd filed a motion for summary judgment as to the conservatorship issue, which the chancery court granted. The chancellor found that the Petitioners failed to produce certificates from at least two examining physicians stating that Joyce was unable to manage her own personal and financial affairs. Regions Bank, as the trustee of the trusts at issue, filed a motion for mediation regarding the remaining issues. The chancellor granted Regions' motion and, after mediation, the parties settled the case. Disagreements later arose regarding the terms of the settlement, which the chancery court resolved in favor of the Petitioners.

¶3. Both Joyce and the Petitioners have appealed from the final judgment, presenting numerous issues regarding the decision of the chancery court. Among other things, Joyce argues that the chancellor erred in his award of attorneys' fees from trust funds, and she contends that the parties did not have a meeting of the minds at the close of the mediation. The Petitioners argue on cross-appeal that the chancellor's granting of summary judgment in favor of Joyce was an error. We affirm the judgment of the trial court.

**FACTS**

¶4. Richard Redd was the CEO and chairman of Redd Pest Control. He died on May 10, 2015. He was survived by his wife, Joyce Redd. He was also survived by six stepchildren or adopted children, five of whom are the Petitioners. The sixth child is Richard and Joyce's adopted son, Brian Redd.

¶5. Richard was financially successful. Before his death, Richard planned and accounted for his estate, including the enactment of the Joyce G. Redd Irrevocable Trust and the Richard Levi Redd Irrevocable Trust. Regions Bank was named as the trustee of both trusts, which, combined, contained approximately $7 million. A life insurance trust also contained approximately $5 million that will become payable upon Joyce's death.

¶6. Richard and Joyce adopted Brian at a young age. Brian suffered from learning disabilities early in life and attended schools for children with such disabilities. As an adult, Brian received money from Richard, and he often lived with Richard and Joyce.

¶7. The Petitioners alleged that since Richard's death, Brian has taken advantage of Joyce, both emotionally and financially. The Petitioners further contended that Brian unduly influenced and coerced Joyce into making financial decisions detrimental to both her and her estate. According to the Petitioners, Brian improperly influenced his mother to give him large sums of money regularly, including $10,000 for Brian to have hair transplants. The Petitioners claimed among other things that Brian, who is more than forty years of age, lives with Joyce rent free and that she added his name to her bank and credit-card accounts.

¶8.    The Petitioners contended that, in order to prevent any further undue influence, they sought the appointment of a conservator over Joyce.  The Petitioners also sought temporary, preliminary, and permanent injunctive relief against Brian.  Joyce filed for a motion for partial summary judgment on November 30, 2018.  The trial judge granted Joyce's motion for partial summary judgment and dismissed the Petitioners' petition for the appointment of a conservator.

¶9.    In regards to the remaining issues, Regions requested approval from the chancery court that the attorneys' fees be paid out of the Joyce G. Redd Irrevocable Trust and that Regions be discharged from liability for such payments.  The chancellor granted Regions' motion. Regions also moved for court-ordered mediation regarding Joyce's allotment of trust assets.  Joyce filed a response in opposition to Regions' motion for court-ordered mediation, claiming that Regions was not a party to the litigation and, therefore, was not entitled to request mediation.  The chancellor granted  Regions' motion and referred the action to mediation.

¶10.    The parties participated in mediation on March 12, 2019, following which all parties signed a settlement terms sheet.  The terms sheet included a $14,000 monthly "budget" for Joyce, which:

    a.  Includes $2100 from [Social Security]; ~$2500 from [required minimum distribution from IRA]; $9400 from trust

    b.  $20k attempted to be transferred 3/18 if possible; March 2019 distributions to be brought up to total of $14,000

    c.  First monthly budget payment to begin 4/1

4

d. Joyce has complete discretion for funds provided to her through monthly amount

¶11.  The Petitioners and Regions later offered a proposed final settlement agreement that, among other things, stated:

> Regions, as trustee of the Joyce G. Redd Irrevocable Trust and Family Trust B, will provide Joyce with a monthly budget of approximately $14,000.00, made up of approximately $2,100.00 from Joyce's Social Security, approximately $2,500.00 from Joyce's IRA representing the annual required minimum distribution (RMD) amount, and approximately $9,400.00 in trust funds. The Parties agree that the Trustee will continue to make the distributions as they are currently being made, however the Parties agree that the IRA is owned by Joyce and she will have the right to amend/alter the distribution amount and the disposal of same, though any amendments/alterations to the IRA distribution will result in Regions making a correction in the amount distributed to Joyce from trust funds such that a monthly total of approximately $14,000 is maintained. The Parties understand and agree that the monthly total may vary slightly depending on the calculation of the required minimum distribution and/or social security payments.

¶12.  Both the settlement terms sheet and the proposed agreement included a global release, though the parties subsequently disagreed as to whether it applied to Regions. Though the settlement terms sheet was signed by all parties, the proposed settlement agreement was not. On April 17, 2019, Regions filed a motion to enforce the settlement agreement, claiming among other things that in the weeks following the mediation, Joyce's counsel had attempted to alter material terms of the agreement, namely, "giv[ing] Mrs. Redd complete and absolute discretion over distributions of the IRA[.]" The Petitioners joined Regions' motion. Joyce filed a response opposing Regions' motion to enforce the settlement agreement. In her response, she contended that "as a result of and as a part of the negotiations that took place

during the March 12, 2019, mediation, all parties agreed that Joyce absolutely and completely owns the IRA."

¶13. After a hearing, the chancellor granted Regions' motion to enforce and found that the "[p]arties reached a meeting of the minds on all material terms of the settlement, including a total monthly budget for Mrs. Joyce Redd of $14,000 per month comprised of her social security benefits, IRA distributions, and the trust making up any deficiency to reach $14,000 per month." On July 15, 2019, the chancellor entered a final judgment of dismissal with prejudice. Joyce appealed from that judgment, and the Petitioners cross-appealed.

## STANDARD OF REVIEW

¶14. This Court will not overturn the chancellor's finding of fact unless it was "manifestly wrong or clearly erroneous." *McNeese v. McNeese*, 119 So. 3d 264, 272 (Miss. 2013) (internal quotation marks omitted) (quoting *Duncan v. Duncan*, 774 So. 2d 418, 419 (Miss. 2000)). But this Court "appl[ies] a *de novo* standard of review to questions of law." *Walker v. State*, 303 So. 3d 720, 726 (Miss. 2020) (citing *Doss v. State*, 19 So. 3d 690, 694 (Miss. 2009)).

## DISCUSSION

### 1. Attorneys' Fees from the Trust

¶15. On January 30, 2019, the chancellor ordered that attorneys' fees for trustee Regions, Joyce, and the Petitioners be paid out of the trusts at issue. The chancellor certified this order as a Rule 54(b) final judgment. Joyce did not take an immediate appeal from this order. She did, however, appeal from the chancellor's July 15, 2019 final order. Regions argues that

6

this Court "lacks appellate jurisdiction over the January 30, 2019 Rule 54(b) order" because Joyce missed the deadline for filing a notice of appeal regarding the attorneys' fees.

¶16. A party has thirty days after a final judgment is entered to perfect an appeal. M.R.A.P. 4(a). Mississippi Rule of Civil Procedure 54(b) states, in part:

> When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment.

¶17. Joyce contends that the plain language of Rule 54(b), as well as its supporting comments and caselaw, prove that her appeal is timely. Specifically, she argues that the issue of attorneys' fees was not properly certified as a final judgment under Rule 54(b), and, as such, the time for appeal did not begin running until the chancellor entered the July 15, 2019 final judgment.

¶18. "If the judgment was interlocutory because the requirements of Rule 54(b) were not met, this Court has not hesitated to reverse for lack of jurisdiction." *Rolison v. Fryar*, 204 So. 3d 725, 734 (Miss. 2016) (citing *Brown v. Collections, Inc.*, 188 So. 3d 1171, 1173 (Miss. 2016); *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 512 So. 2d 897, 899 (Miss. 1987)). But "[a] Rule 54(b) certification, right or wrong, starts the time for appeal running." *Id.* (internal quotation marks omitted) (quoting *In re Lindsay*, 59 F.3d 942, 951 (9th Cir. 1995)). "Thus, once a trial court has directed the entry of a final judgment under Rule 54(b), any party seeking relief from that judgment, even on the ground that the judgment is, in fact, interlocutory, must perfect an appeal within thirty days after the entry of judgment." *Id.*

(citing *In re Lindsay*, 59 F.3d at 951). "A judgment merely voidable . . . based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review . . . ." *Id.* (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981)).

¶19.    All that being said, this Court held in the recent *Rogers v. Estate of Pavlou (In Re Estate of Pavlou)*, 308 So. 3d 1284, 1288 (Miss. 2021), that an order on a probate claim for attorneys' fees is a final, appealable judgment, regardless of whether the chancellor certifies as one it under Rule 54(b). Joyce was required to perfect an appeal from the order within thirty days. *See id.* She failed to do so, and, consequently, this Court lacks jurisdiction to adjudicate the attorneys' fees issue.

### 2.    Mediation

¶20.    Joyce contends that the underlying cause of action in this case was dismissed, thus the chancery court erred by ordering mediation. She also argues that Regions was not a party and that the chancery court erred by ordering mediation on the motion of a non-party.

¶21.    The Petitioners sought three forms of relief in their initial action on July 31, 2018: the appointment of a conservator over Joyce and her estate; a TRO and injunctive relief with respect to Joyce; and a TRO and injunctive relief with respect to Brian Redd. The chancery court's "Order Granting Motion for Summary Judgment as to Appointment of Conservator or Guardian" stated it applied to "Count I of Petitioners['] petition" and, therefore, there were still causes of action pending before the chancery court at the time mediation was ordered.

8

¶22. As to whether chancellor erred by ordering mediation on the motion of Regions, we observe that Court Annexed Mediation Rule for Civil Litigation III(A) states in relevant part that "[a]ny circuit, chancery and county court in this state may, either *on its own motion* or on the motion of any party, determine that a case is appropriate for mediation." (Emphasis added.) Thus, the chancery court had the authority to order mediation without a motion from Regions, party or not.

¶23. Moreover, the question is moot because the parties subsequently entered into a voluntary settlement agreement. The chancellor ordered Joyce to participate in mediation, but he did not force her to agree to a settlement. Joyce has offered no authority holding that a party may escape from a voluntary settlement agreement just because the trial court should not have sent the case into mediation. Joyce has not shown she would be entitled to relief even if this Court agreed that mediation was erroneously ordered.

¶24. Joyce has shown no reversible error resulting from the chancery court's order sending the case to mediation.

### 3. Trusts at Issue

¶25. Next, Joyce contends that the chancery court "created a cause of action" by permitting Regions to participate in the litigation after resolving the conservatorship issue in Joyce's favor. Again, we observe that Joyce entered into a voluntary settlement agreement regarding her rights vis-a-vis the trusts. It is axiomatic that "[s]ettlement agreements 'are contracts, made by the parties,' which will be enforced by the law." *Crowley v. Germany*, 268 So. 3d 1277, 1278-79 (Miss. 2018) (quoting *McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss.

9

1990)).  "With regard to the property of the parties, this is a strong and enforceable rule with few, if any, exceptions."  *McManus*, 569 So. 2d at 1215 (citing *Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989)); *see also* *Ladner v. O'Neill (In re Estate of Davis)*, 42 So. 3d 520, 527 (Miss. 2010) ("The law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." (internal quotation marks omitted) (quoting *Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1055 (Miss. 2005))).  Joyce cites no authority holding that parties to a settlement are limited to the active causes of action of the underlying lawsuit, or even to the subject matter of the suit; in fact, the opposite is generally true—parties to a settlement agreement are free to bargain for things they would not win in court and to trade away things they might otherwise keep.  *See McManus*, 569 So. 2d at 1215.

¶26.    No error has been shown on this point.

### 4.    Meeting of the Minds

¶27.    Joyce next argues that the chancellor erred by finding that the parties had reached an agreement at the mediation and by enforcing that agreement.  Joyce's briefing on this issue is perfunctory, consisting of two pages.  Her substantive arguments are based on a single case, *Viverette v. State Highway Commission*, 656 So. 2d 102, 103 (Miss. 1995), and that case is easily distinguished.  Joyce appears to contend that *Viverette* stands for the proposition that the chancery court must not find a settlement agreement "where the parties disagree" about whether there was an agreement on a material term.  But in *Viverette*, this

10

Court actually found that there was "no evidence" of a meeting of the minds and no findings by the trial court on that point. *Id.* In today's case, the Petitioners presented a written and signed settlement agreement with a terms sheet specifying a $14,000 per month "budget" for Joyce and a "global release." And the chancery court made an express, written finding that there had been "a meeting of the minds on all material terms of the settlement" and that that agreement was reflected in the signed settlement agreement and the unsigned, formal proposed settlement agreement and release prepared by the Petitioners.

¶28. "The existence of a contract is a question of fact that is to be determined by a jury, or a trial judge when a trial is conducted without a jury." *Rogers v. Casey & Co. LLC*, 293 So. 3d 857, 863 (Miss. Ct. App. 2019) (internal quotation marks omitted) (quoting *Bert Allen Toyota Inc. v. Grasz*, 909 So. 2d 763, 768 (Miss. Ct. App. 2005)). This Court will not overturn the chancellor's finding of fact unless it was "manifestly wrong or clearly erroneous." *McNeese v. McNeese*, 119 So. 3d 264, 272 (Miss. 2013) (internal quotation marks omitted) (quoting *Duncan v. Duncan*, 774 So. 2d 418, 419 (Miss. 2000)). Joyce has made no real effort to show that the chancellor's findings were manifestly wrong or clearly erroneous; she simply asserts that the chancellor had no evidence, but the signed terms sheet was evidence—strong evidence, in fact.

¶29. Whether this evidence was sufficient is not briefed, so we will not consider this issue further. This Court requires "that counsel not only make a condensed statement of the case but also support proposition with reasons and authorities in each case." *Holland v. State*, 705 So. 2d 307, 337 (Miss. 1997) (internal quotation mark omitted) (quoting *Roberson v.*

11

***State***, 595 So. 2d 1310, 1318 (Miss. 1992)). "The law is well established that points not argued in the brief on appeal are abandoned and waived." ***Arrington v. State***, 267 So. 3d 753, 756 (Miss. 2019) (citing ***Collins v. City of Newton*** , 240 So. 3d 1211, 1221 (Miss. 2018)). "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." ***Id.*** (internal quotation marks omitted) (quoting ***Byrom v. State***, 863 So. 2d 836, 853 (Miss. 2003)).

¶30. Joyce has failed to show reversible error on this issue.

### 5. Additional Evidence

¶31. Joyce next argues that the chancellor erred by refusing to admit numerous documents offered into evidence by her at the hearing on the motion to enforce the settlement agreement. These documents were excluded either because they were found to be irrelevant or cumulative.

¶32. Joyce has again failed to adequately brief the issue. She cites no authority and fails to make an specific argument regarding any individual document that was offered into evidence and refused. The issue is procedurally barred.

### 6. Attorneys' Fees from the Trust (Joyce)

¶33. Finally, Joyce argues that her attorneys' fees after the mediation should have been paid by the trusts. The chancellor found that "the litigable issues were settled as of March 12, 2019." During the June 11, 2019 hearing on Regions' motion to enforce the settlement agreement, the chancellor found no merit to Joyce's contention that no meeting of the minds

12

occurred with regard to the settlement, and he ordered that no more attorneys' fees were to be awarded to her to pursue the claim.

¶34. Joyce's briefing on this issue is, again, wanting. She presents no authority showing she is entitled to be paid attorneys' fees from the trust. The only thing that Joyce does cite on this point is the testimony of one of her children regarding the general purpose of the trust.

¶35. We review a decision to award or not to award attorneys' fees for an abuse of discretion. *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 478 (Miss. 2002). Joyce has failed to show an abuse of discretion. This issue is without merit.

### 7. Cross Appeal: Conservatorship

¶36. In their single issue on cross-appeal, Petitioners, five of Joyce's six children, argue that the chancellor incorrectly granted Joyce's motion for summary judgment on the question of a conservatorship.

¶37. While neither party has pointed it out, we observe that the chancellor entered an order certifying the partial summary judgment as an appealable judgment long before the Petitioners filed their notice of appeal. As noted above, "[a] Rule 54(b) certification, right or wrong, starts the time for appeal running." *Rolison v. Fryar*, 204 So. 3d 725, 734 (Miss. 2016) (internal quotation marks omitted) (quoting *In re Lindsay*, 59 F.3d 942, 951 (9th Cir. 1995)). And, "[r]egardless of whether the parties raise jurisdiction, the Court is required to note its own lack of jurisdiction, and if the notice of appeal is not timely filed, the appellate court simply does not have jurisdiction." *Smith v. Parkerson Lumber, Inc.*, 890 So. 2d 832, 834 (Miss. 2003) (citing *Michael v. Michael*, 650 So. 2d 469, 471 (Miss. 1995)).

13

¶38.   The Petitioners did not file a timely notice of appeal, thus this Court lacks jurisdiction to consider this issue.

## CONCLUSION

¶39.   No error has been shown on direct appeal or cross-appeal.  Consequently, we affirm the chancery court's judgment.

¶40.   **ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED.**

**MAXWELL, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. KING, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY BEAM, J. KITCHENS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN AND BEAM, JJ. BEAM, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND COLEMAN, J.**

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶41.   I would find that the trial court erroneously ordered mediation on the motion of a nonparty. However, because the parties voluntarily entered into the settlement agreement, I agree with the plurality's finding that no reversible error resulted from the chancery court's order.

¶42.   John R. Redd, William Howard Redd, Richard Lee Redd, Robert Charles Redd, and Tina Cutaia Arias (collectively, "the Petitioners") filed a petition for appointment of conservator and/or guardian, seeking the appointment of conservator over the estate of Joyce G. Redd and for a temporary restraining order and preliminary injunction and permanent injunction against Brian Keith Redd. Regions Bank was the trustee of the trusts at issue and was not named as a party.

14

¶43. On January 10, 2019, Regions moved the trial court for an order compelling the parties to mediate the disputes raised in litigation. As the basis for its motion, Regions specifically cited Rule III(C) of the Court Annexed Mediation Rules for Civil Litigation, which provides that "[a]ny *party* may apply to the courts of this state for referral of a case to mediation by motion upon giving notice to all other parties." (Emphasis added.) The trial court granted the motion, stating, "[t]his cause came before the Court for hearing on January 30, 2019, on the motion of Regions Bank as trustee of the Joyce G. Redd Irrevocable Trust for referral of this action to mediation . . . ."

¶44. Yet Regions was not a party to the action. This fact is emphasized by Regions' own motion for court-ordered mediation, which began by stating, "[n]onparty Regions Bank . . . hereby moves the Court . . . ." Because Regions was not a party to the action, I would find that the trial court erred by granting its motion for court-ordered mediation. I find no merit in the plurality's reasoning that the chancery court had the authority to order mediation on its own motion. Although the chancery court had that authority pursuant to Court Annexed Mediation Rule for Civil Litigation III(A), it did not exercise that authority. Instead, in my opinion, it improperly granted mediation on the motion of a nonparty.

¶45. Even so, I agree with the plurality's conclusion that Joyce may not escape from a voluntary settlement agreement and that she has failed to show reversible error resulting from the chancery court's order sending the case to mediation.

**BEAM, J., JOINS THIS OPINION IN PART.**

15

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶46.    I concur with Justice Beam's opinion that, once the chancellor dismissed the Redd children's petition for a conservatorship over Joyce G. Redd, the chancellor lacked authority to order her to mediation. Because the Redd children's request for various forms of injunctive relief was dependent on the merits of their claim that Joyce was incapable of managing her own affairs, no issues remained to be mediated after the conservatorship petition was dismissed. Further, as recognized by Presiding Justice King, the chancellor lacked authority to grant a motion for mediation filed by Regions, a nonparty to the action. For those reasons, the chancellor erred by ordering Joyce Redd to mediation.

¶47.    Although Presiding Justice King finds that the order of mediation was erroneous, he concludes that Joyce Redd is bound to the terms of the settlement agreement reached pursuant to that mediation. I would reverse the chancellor's order enforcing the settlement agreement. "A settlement is a contract." *Hastings v. Guillot*, 825 So. 2d 20, 23 (Miss. 2002) (citing *McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss. 1990)). "A contract may be set aside, however, where both parties at the time of the agreement were operating under a mutual mistake of fact." *White v. Cooke*, 4 So. 3d 330, 334 (Miss. 2009). Mutual mistakes concerning "past or present material fact[s]" constitute grounds for setting aside a contract. *Id.* (citing *Greer v. Higgins*, 338 So. 2d 1233, 1236 (Miss. 1976)).

¶48.    This case was sent to mediation, and a settlement agreement was reached. The implied threat underlying the mediation was that, if a settlement agreement was not reached, the Redd children and Regions would try the remaining issues. But there were no remaining issues.

16

And Regions was a nonparty. Under those circumstances, but for the chancellor's erroneous order of mediation, Joyce Redd could have left the bargaining table entirely. The order of mediation deprived her of that option. When Joyce Redd signed the settlement agreement, she and her attorney were operating under the material, but erroneous, belief that their choices were either to settle or to go to trial. The Redd children and Regions shared that erroneous belief. Because the parties' erroneous assumption constituted a mutual mistake of fact, the settlement agreement was subject to rescission. *White*, 4 So. 3d at 334. Therefore, I would reverse the chancellor's order enforcing the settlement agreement. I agree with the plurality's resolution of the other issues.

**COLEMAN AND BEAM, JJ., JOIN THIS OPINION.**

**BEAM, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶49.    While I agree with the dismissal of the conservatorship petition, I disagree with the court's order of mediation.  Regions Bank, as trustee of the trusts at issue, filed a motion for mediation on the same basis that the Petitioners sought a conservatorship.  However, the court found that a conservatorship was unnecessary.

¶50.    Although Petitioners failed to attach medical affidavits to their conservatorship petition as required by law, the court ordered Joyce to undergo a medical evaluation.  Joyce was found capable of managing her affairs.

¶51.    The court dismissed the conservatorship petition, yet it ordered her to mediation despite having just been found capable of handling her assets.

17

¶52. I find that the court had no authority to order mediation once the conservatorship petition was dismissed. The plurality finds that the Petitioners sought three forms of relief and that the order granting summary judgment was partial and only applied to one count of the petition. "[T]herefore, there were still causes of action pending before the chancery court at the time mediation was ordered." Pl. Op. ¶ 21.

¶53. Regions moved for mediation on these "remaining issues." The remaining issues before the court were requests for a temporary restraining order and injunctions that were included in the petition for conservatorship. These claims were premised on the same allegations as the conservatorship: that "Joyce was making distributions of money and/or property to Brian or for his benefit without the express written approval of John and or this Court" and that "immediate and irreparable injury. . . will result to Joyce's estate."

¶54. I submit that these claims became non-issues at the dismissal of the conservatorship petition and/or are not appropriate for mediation. The court is responsible for issuing temporary restraining orders and preliminary and/or permanent injunctions. Miss. R. Civ. P. 65(c).

¶55. Another issue did arise on attorneys' fees, and Regions requested court approval for the fees to be paid out of the trust, but Regions also filed a motion for court-ordered mediation, which states the following:

> The parties' counsel have . . . spent an inordinate amount of time on the issue
> of the propriety of the Trustee's payment of the parties' attorneys' fees. The
> contentiousness of these discussions and the inability of the parties' counsel
> to collectively move the action forward give the Trustee concerns about the
> prudence of continuing the litigation in this posture. As such, the Trustee
> suggests a more prudent course . . . would be to attempt mediation.

> *[T]he dispute largely centers on Respondent Brian Redd and his behavior toward and treatment of his mother, Respondent Joyce G. Redd, as well as his abuses of her finances. Upon belief of the Trustee, the Parties have suffered great miscommunications between the Petitioners . . . and . . . Mrs. Redd, with Brian Redd embattled between them.*
>
> Therefore, the Trustee submits that this action is appropriate for referral to mediation . . . [which] will greatly enhance the likelihood of an amicable resolution of this case such that the good relations that remain between the parties will be preserved . . . and *trust assets will be conserved.*

(Emphasis added.)

¶56.	The chancellor, having just found Joyce capable of handling her own affairs, ordered her to mediation in an effort to conserve her assets.

¶57.	When the chancellor found that a conservatorship was unwarranted and that Joyce could handle her own affairs, any and all efforts to externally or internally control Joyce's financial decisions ceased.

¶58.	This Court in ***Young v Kennedy (In re Conservatorship of Young)***, 293 So. 3d 212 (Miss. 2020) emphasized the importance of maintaining a person's ability to care for themselves both personally and financially when able. The ***Young*** Court reversed a chancellor for not releasing the entirety of a woman's funds back to her after her need for a conservatorship ended. ***Id.*** at 214.

¶59.	In ***Young***, a woman was attempting to enter into a large contract to sell her commercial property. ***Id.*** Her husband and sons became concerned about her ability to make financial decisions and obtained a court-ordered conservator following physicians' certificates stating she had mild cognitive impairment. ***Id.*** The conservator assisted the

19

woman in entering the contract, and the very next day, the husband, sons, conservator, and guardian ad litem all agreed that the conservatorship could be terminated because the need for the conservatorship was met. *Id.*

¶60. "The chancellor signed off on an agreed judgment that all parties signed . . . agreeing to terminate the conservatorship. But the agreed judgment also contained various provisions and directions for Carolyn's money." *Id.* at 218.

¶61. This Court held:

> At the point that the conservatorship was terminated by agreed judgment, *no one except for Carolyn had the right to say or agree to what she would or could do with her money*. Therefore, the court erred by not releasing the entirety of Carolyn's funds back to her upon termination of the conservatorship. She was no longer under a conservatorship that needed to provide protection for her funds; *her funds were hers* and should have been released to her.

*Id.* at 218-19 (emphasis added).

¶62. Here, Joyce was never found to be in need of a conservator. But the principle that the funds are hers to do with what she pleases—remains the same. There is no dispute that Joyce is the sole beneficiary of the trusts at issue.

¶63. Joyce's late husband, Richard Levi Redd, set up the Joyce Redd Irrevocable Trust with about $3 million of assets to be used to care for *Joyce*. In addition to the interest income allowed to provide for Joyce, the Joyce Redd Irrevocable Trust allows *Joyce* to use principal distributions if needed. The Richard Levi Redd Irrevocable Trust was established to provide for *Joyce* in the event all proceeds from the Joyce Redd Irrevocable Trust were exhausted. At the end of each year, in or around December, if the interest income is sufficient to fully

20

provide for *Joyce* at the discretion of the Trustee, each Petitioner receives a distribution from the Richard Levi Redd Irrevocable Trust in an amount determined by the Trust's investment performance for that year.

¶64. A trustee has the duty "to act in good faith in accordance with the terms and purposes of the trust and the interests of the beneficiaries." Miss. Code Ann. § 91-8-105(b)(2) (Rev. 2018). Moreover, there is a requirement "that a trust and its terms be for the benefit of its beneficiaries as the interests of such beneficiaries are defined under the terms of the trust, and that the trust have a purpose that is lawful and possible to achieve." Miss. Code Ann. § 91-8-105(b)(3) (Rev. 2018).

¶65. Here, Regions was not acting for the benefit of Joyce but rather for the benefit of the Petitioners, who incited this entire litigation on the basis of Joyce's needing a conservator.

¶66. The court had no basis to order Joyce to mediation when the underlying cause of action was premised on the conservation of her assets and was precipitated by a suit deeming her incapable, which the court admitted she was not.

**KITCHENS, P.J., AND COLEMAN, J., JOIN THIS OPINION.**